## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

DALE JACKSON,                          *

     Plaintiff                    *

v.                                     *      CA No.      2:21-CV-228-RWS-JCF

FANNIN COUNTY, GEORGIA                 *

## COMPLAINT

COMES NOW Plaintiff, Dale Jackson, and hereby files this Complaint

against Fannin County, Georgia ("Defendant"), alleging that Defendant interfered

with Plaintiff's rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §

2601 *et seq*. to take time off from work in order to have surgery; that it retaliated

against him for exercising his rights under the FMLA; and that Defendant violated

his rights under the Americans with Disabilities Act, as amended by the ADA

Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101 *et seq*.

## INTRODUCTION

### 1.

This is an action for monetary relief brought under the Family and Medical

Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. and the Americans with

Disabilities Act, as amended by the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101 *et seq.*

2.

Through this action, Plaintiff seeks redress of unlawful actions directed towards him in his employment by the Defendant and seeks restitution under the laws of the United States for losses he suffered as a direct and proximate result of Defendant's actions.

3.

This is a proceeding for a declaratory judgment as to Plaintiff's rights and for a permanent injunction enjoining Defendant from maintaining policies and practices of interfering with and retaliating against Plaintiff and other employees who seek to take FMLA qualifying leave; and enjoining the Defendant from discriminating against Plaintiff and other persons with disabilities.  This action also seeks restitution to Plaintiff of all rights, privileges, benefits and income that would have been received by him but for Defendant's unlawful practices.

4.

Among other relief sought, this action seeks back pay, liquidated damages, equitable relief (such as reinstatement or if that is not feasible, front pay), compensatory damages, attorneys' fees and costs.

## JURISDICTION AND VENUE

### 5.

Jurisdiction of this Court over Plaintiff's claims is invoked pursuant to 29 U.S.C. § 2601 *et seq.* (FMLA), 28 U.S.C. §§ 1331, 1343(a)(4). §§ 2201 and 2202; and 42 U.S.C. § 12101 et seq. (ADAAA).

### 6.

Venue is appropriate in this Judicial District because Defendant is located in this district and the unlawful actions and practices alleged herein were committed within the Northern District of Georgia.

## PARTIES

### 7.

Plaintiff is a resident of the State of Georgia and a citizen of the United States and submits himself to the jurisdiction of this Court.

### 8.

At all times relevant hereto, Plaintiff was an employee eligible for leave under the Family Medical Leave Act in that he had worked for Fannin County for over a year and more than 1250 hours in the year prior to his termination.

9.

Defendant Fannin County, Georgia is a political subdivision of the State of Georgia. It is endowed by the laws of the State of Georgia with the capacity to be sued, including the capacity to be sued as a defendant in this action. The County may be served with process in this action through the Chairman of its Board of Commissioners, Jamie Hensley, by delivering the Summons and a copy of this Complaint to him at his office at 400 West Main Street, Suite 100, Blue Ridge, GA 30513, after which service the County will be subject to the *in personam* jurisdiction of the Court.

10.

Defendant Fannin County, Georgia is an employer that engages in activities affecting commerce within the meaning of the FMLA and the ADAAAA.

11.

At all times relevant to this action, Defendant had more than 50 employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year who worked  within 75 miles of Plaintiff's place of work.

12.

Defendant is a covered employer under the FMLA, 29 CFR § 825.104; and the Americans with Disabilities Act, as amended by the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101 et seq.

## ADMINISTRATIVE PROCEEDINGS

13.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission within 180 days of the occurrence of the acts of which he complains.

14.

On or after September 15, 2021, Plaintiff received a Notice of Right to Sue from the U.S. Department of Justice relating to his charge of discrimination. This civil action is instituted in the appropriate federal district court within ninety (90) days of the receipt of said Notice.

## STATEMENT OF FACTS

15.

Plaintiff was employed by Defendant as a truck driver from June 11, 2018 through January 13, 2020 and worked more than 1250 hours in the year prior to his termination.

16.

Plaintiff has a disability, as defined by the ADAAA, that substantially affects his ability to perform major life functions, however, he was able to perform the essential functions of his job without any accommodations, except for the time period in December 2019 and January 2020 when he was absent from work recovering from surgery.

17.

Plaintiff's disability is also a serious health condition, as defined by the FMLA, in that it resulted in his being unable to work for more than three days, and required ongoing medical treatment, including surgery and medication.

18.

Plaintiff performed his job well.

19.

Plaintiff's disability ultimately resulted in his needing surgery, which occurred in December 2019.

20.

In October 2019, Plaintiff's doctor referred him to a specialist for an evaluation, but the doctor did not restrict his work activities at that time and Plaintiff was able to continue working.

21.

Because it was possible that he would need surgery, on October 30, 2019, Plaintiff met with Lauren Jones, Human Resources and Payroll Clerk, to discuss his options should surgery be required.

22.

Plaintiff was told he was eligible for eleven weeks of FMLA leave and that if he became disabled, he could file for Short Term Disability under the county insurance plan.

23.

Plaintiff was not eligible for the full twelve-week FMLA protected leave because he had previously been forced by his employer to take one week of FMLA leave in August 2019, even though his doctor only suggested he be absent for three days.

24.

Plaintiff did not request FMLA leave in this meeting because he did not yet know if he needed to be absent for surgery and he was still fully capable of performing all the essential functions of his job.

25.

Ms. Jones gave Plaintiff the FMLA medical certification forms so that if he needed surgery he would already have the paperwork ready to give to his doctor.

26.

Even though Plaintiff remained able to perform his truck driving job, when he got to work on Thursday, October 31, 2019, he was not allowed to clock-in and was sent home until further notice.

27.

On Monday, November 4, 2019, Plaintiff was told that the county thought he was a liability and forced him to begin FMLA leave that day, even though he didn't request or need it.

28.

At the time that Defendant forced Plaintiff on medical leave, it made no medical evaluation of Plaintiff's ability to work and did not rely on any objective or medically available evidence.

29.

On November 18, 2019, Plaintiff was seen by a surgeon, who recommended that he move ahead with scheduling surgery, which Plaintiff did, making the arrangements for December 10, 2019.

30.

Had Plaintiff not been forced out on FMLA leave, he could have worked until December 9th, which would have preserved at least four weeks of his FMLA leave.

31.

On December 2, 2019, Defendant sent Plaintiff Short Term Disability benefit forms to complete, instructing him to backdate the documents to October 31, 2019. Plaintiff followed these instructions.

32.

Plaintiff was not provided any notice of his FMLA rights, the date his FMLA was scheduled to end, or the date he was expected to return to work.

33.

Plaintiff underwent a successful surgery for spinal stenosis on December 10, 2019.

34.

It was Plaintiff's understanding that he would be released to return to work after his follow-up appointment with his doctor on January 30, 2020.

35.

On January 9, 2020, Defendant mailed Plaintiff a certified letter dated

December 31, 2019, received by Plaintiff on January 13, 2020, which stated that

his FMLA leave would expire on January 13, 2020 and if he did not have a full

release to return to work by that time, he would be terminated.

36.

This was the first time Plaintiff learned that there was a specific date that his

FMLA leave entitlement would end.

37.

November 4, 2019, the date Plaintiff was forced out on leave, to January 13,

2020, is one work day short of ten weeks. Eleven weeks from November 4, 2019,

is January 20, 2020.

38.

In addition to the eleven weeks Plaintiff was supposed to receive, he was

also entitled to an additional two days of FMLA leave from August 2019, since

Defendant charged him with a week of leave, even though the doctor only

restricted him for three days.

39.

Also on January 9, 2020, Defendant mailed Plaintiff a letter dated November 4, 2019, which he had not previously seen, stating that Plaintiff had indicated in a meeting on October 30, 2019, that he wanted to take FMLA leave beginning then, which is not true.

40.

The letter also stated that Plaintiff was unable to perform his job duties, which is also not true.

41.

In fact, Plaintiff was terminated on January 13, 2020, the very day he received Defendant's letter and prior to the end of the FMLA leave to which he was entitled.

42.

During the entirety of his FMLA leave, Plaintiff was in regular contact with his supervisor in the Road Department and was consistently told not to worry about being absent and that he should just let them know when he was able to return to work.

43.

In none of those conversations was he ever told that he had to return to work by January 13, 2020, or be fired.

44.

In addition to these conversations with his supervisor, Plaintiff's wife visited Defendant's office every week to pay Plaintiff's share of his insurance premium.

45.

In none of these visits did anyone ever tell her that Plaintiff's leave would end January 13, 2020.

46.

Under Defendant's Personnel Policy and Procedures Section 1-1-47, with the approval of Defendant's chairman employees may be granted up to three additional months of leave from work, over and above that which is allowed under the FMLA and Defendant's FMLA policy.

47.

Had Plaintiff been informed his FMLA leave would expire before he returned to the doctor, he could have requested an additional leave of absence through January 30, 2020.

48.

This approximately two-week extension would have been a reasonable accommodation of his disability and would not have caused Defendant undue hardship.

49.

Plaintiff provided Defendant with documentation that he was released to return to work on January 31, 2020; however, Defendant never recalled Plaintiff to work even though his position had not been filed.

50.

As a result of Defendant's actions, Plaintiff became unemployed and it took more than a year for him to find full-time employment. Even though he is now employed full-time, the position will end in April 2022, which will leave Plaintiff unemployed once again.

51.

Plaintiff suffered emotional distress as a result of Defendant's actions, including the stress of having lost his income and benefits and the uncertainty of finding another job.

52.

At all times, Defendant acted willfully, intentionally, in bad faith and without regard for Plaintiff's protected rights.

53.

Defendant failed to act in good faith, entitling Plaintiff to liquidated damages under the FMLA.

## COUNT I
## Interference with FMLA Rights

54.

Defendant interfered with Plaintiff's FMLA rights, as reflected in the above Paragraphs 8-12 and 15-53, including, but not limited to, by forcing him to take FMLA leave prior to his needing it, failing to inform him of the date he was expected to return to work, and terminating him prior to the eleven-week FMLA leave that Defendant had approved.

55.

Defendant's interference with Plaintiff's FMLA rights violated the Family and Medical Leave Act.

56.

The effect of the Defendant's actions has been to deprive Plaintiff of income in the form of wages, health insurance, prospective retirement benefits, social

security, and other benefits due him, and caused him to incur other monetary losses because of his termination.

57.

As such, Plaintiff has suffered, is now suffering, and will continue to suffer irreparable injury from the Defendant's acts of interfering with his FMLA rights.

58.

Therefore, Plaintiff is entitled to both equitable and monetary relief for Defendant's violation of the law.

59.

As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered damages in an amount to be proven at trial.

60.

Plaintiff is further entitled to liquidated damages for the violations of his civil rights under the FMLA, 29 U.S.C. § 2601 *et seq*.

## COUNT II
## <u>Retaliation for Taking FMLA Leave</u>

61.

The Defendant retaliated against Plaintiff as more fully set forth in Paragraphs 8-12 and 15-53 above, by terminating him prior to the expiration of the

approved eleven weeks of FMLA leave, and refusing to allow him to return to work after he was released on January 31, 2020.

62.

Defendant's retaliatory actions violated section 105 of the Family and Medical Leave Act.

63.

The effect of the Defendant's actions has been to deprive Plaintiff of income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits due him, and caused him to incur other monetary losses because of being terminated.

64.

As such, Plaintiff has suffered, is now suffering, and will continue to suffer irreparable injury from the Defendant's acts of retaliating against him for engaging in activities protected by the FMLA.

65.

Therefore, Plaintiff is entitled to both equitable and monetary relief for the Defendant's violation of the law.

66.

As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered damages in an amount to be proven at trial.

67.

Plaintiff is further entitled to liquidated damages for the violations of his civil rights under the FMLA, 29 U.S.C. § 2601 *et seq.*

## COUNT III
## VIOLATION OF THE ADAAA

68.

At all times relevant hereto, Defendant has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADAAA.

69.

At all times relevant hereto, Plaintiff was an individual with a disability as defined under the Americans with Disabilities Act, 42 U.S.C. § 12102 (1)(A).

70.

Moreover, at all times relevant hereto, Plaintiff has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111 (8) and able to perform the essential functions of the job for which he was hired by Defendant.

71.

Defendant's actions as set forth in Paragraphs 8-53, including forcing him to take FMLA leave prior to his needing it, failing to grant him an accommodation of a less than two-week extension of his FMLA leave, and terminating Plaintiff, violate the ADAAA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability.

72.

As a direct and proximate result of Defendant's intentional discrimination, Plaintiff has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including social security, all in an amount to be established at trial.

73.

In addition, Defendant's actions have caused, continue to cause, and will cause the Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

74.

Plaintiff is entitled to be reinstated to employment by Defendant and, if reinstatement is not feasible, Plaintiff is entitled to an award of damages for future lost wages and benefits of employment.

75.

Plaintiff is further entitled to compensatory damages for the violations of his rights under the ADAAA.

## COUNT IV
## VIOLATION OF THE ADAAA

76.

Alternatively,  as set forth in paragraphs 8-53, Defendant regarded Plaintiff as having a disability, calling him a "liability" and not allowing him to work even though he was able to, thereby further violating the ADAAA 42 U.S.C. 12102(3)(A).

77.

As a direct and proximate result of Defendant's intentional discrimination, Plaintiff has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including social security, all in an amount to be established at trial.

78.

In addition, Defendant's actions have caused, continue to cause, and will cause the Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

79.

Plaintiff is entitled to be reinstated to employment by Defendant and, if reinstatement is not feasible, Plaintiff is entitled to an award of damages for future lost wages and benefits of employment.

80.

Plaintiff is further entitled to compensatory damages for the violations of his rights under the ADAAA.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff respectfully prays that this Court:

1.     Issue a declaratory judgment that Defendant's acts, policies, practices, and procedures complained of herein violated Plaintiff's right under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. and the  Americans with Disabilities Act, as amended, as amended by

the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101 et seq.;

2.   Grant Plaintiff a permanent injunction enjoining the Defendant, its officers, agents, successors, employees, attorneys, and those acting in concert with them, from engaging in any employment practice or policy which discriminates against the Plaintiff and others similarly situated because of their disabilities, for seeking and/or taking FMLA qualifying leave, and/or because of their participation in this lawsuit;

3.   Order the Defendant to make whole the Plaintiff by providing for his reinstatement, back pay, reimbursement for lost pension and retirement benefits, insurance benefits, medical expenses incurred, social security, experience, training, and other benefits and expenses in an amount to be proven at trial;

4.   Grant to Plaintiff liquidated damages in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost as a result of Defendant's unlawful acts as provided by the FMLA inasmuch as Defendant has acted without good faith and both willfully and intentionally in violation of the Act;

5.    Grant to Plaintiff compensatory damages in an amount reasonable and commensurate with the losses imposed upon him by the Defendant's unlawful and discriminatory acts, including his pain and emotional distress;

6.    Grant to Plaintiff a jury trial on all issues so triable;

7.    Grant to Plaintiff a reasonable attorney's fee and reasonable expert witness fees together with any and all other costs associated with this action as provided by law; and

8.    Grant such additional relief as the Court deems proper and just.

 Respectfully submitted this 21st day of October, 2021.

> s/Janet E. Hill
> Janet E. Hill, Esq.
> Georgia Bar No. 354230
> Attorney for Plaintiff
> HILL & ASSOCIATES, P.C.
> 1160 S. Milledge Ave, Suite 140
> Athens, Georgia 30605
> Telephone: (706) 353-7272
> Fax: (706) 549-8446
> E-mail: janet@hillworklaw.com